UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DONALD J. KIRCKOF and
ROCHESTER LAPIDARY
JEWELERS, INC.,

        CIVIL NO. 03-3380 (JRT/JSM)

Plaintiffs,

REPORT AND RECOMMENDATION

v.

WILLIAM A. BENOIT and
BENOIT, KEITH, SHEEHAN &
ASSOCIATES, LLP,

Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon defendants' Motion to Enforce Settlement Agreement [Docket No. 41]; plaintiffs' Motion to Modify Pretrial Scheduling Order [Docket No. 55]; and plaintiffs' Motion to Strike Defendants' Reply Memorandum and Second Affidavit of Jon R. Russel [Docket No. 63]. Damon L. Ward, Esq. appeared on behalf of plaintiffs and Gary Hoch, Esq. and Jon R. Russel, Esq. appeared on behalf of defendants. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, recommends that:

    1.    Defendants' Motion to Enforce Settlement Agreement [Docket No. 41] be **GRANTED**;

    2.    Plaintiffs' Motion to Modify Pretrial Scheduling Order [Docket No. 55] be **DENIED** as moot; and

3.   Plaintiffs' Motion to Strike Defendants' Reply Memorandum and Second Affidavit of Jon R. Russel [Docket No. 63] be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of plaintiffs' claims that defendants engaged in fraud, conspiracy, and negligent representation relating to accounting work they performed for plaintiffs from approximately 1999-2001. Plaintiffs' action was commenced on June 3, 2004 and according to plaintiffs, they immediately engaged in substantial discovery. See Plaintiffs' Memorandum in Opposition to Enforce Settlement ("Pls.' Mem.") at p. 3.

Plaintiffs' original counsel Alfred Edwall, became severely ill in May 2004, and closed his law offices in June of 2004. See Affidavit of Donald J. Kirckof ("Kirckof Aff."), ¶ 11; see also Affidavit of Jon R. Russell ("Russell Aff."), Ex. 1. In addition, plaintiffs' expert, Richard Wayne, was diagnosed with liver cancer in March of 2003 and underwent a liver transplant on May 14, 2004, making him unable to work during the first two months post-operation. See Kirckof Aff., ¶¶ 12, 13; see also Affidavit of Richard Wayne, ¶¶ 6-8 (unexecuted). On September 2, 2004, Paul H. Grinde, Esq. ("Grinde") filed a Notice of Appearance [Docket No. 38], providing that he would be appearing as counsel for plaintiffs.

Defendants had made a prior offer to plaintiffs to settle this matter for $10,000. See Affidavit of Gary W. Hoch ("Hoch Aff."), ¶ 8. On September 28, 2004, plaintiffs' counsel telephoned defendants' counsel to communicate that plaintiffs were interested in settlement, and offered to settle the matter for $15,000. See Russell Aff., ¶¶ 2, 3; see also Kirckof Aff., ¶ 15 (acknowledging that plaintiffs invited a resolution to this case from defendants). Defendants accepted the offer to settle the matter for $15,000 and stated that they would

prepare the release and stipulation of dismissal. Id., ¶¶ 4, 5. A September 29, 2004 letter from defendants' counsel to plaintiffs' counsel memorialized the settlement agreement:

> I write to confirm that we have reached an agreement in principle for the settlement of this matter. Bill Benoit and Benoit Keith Sheehan & Associate agree to pay plaintiffs $15,000 and dismiss their claim for unpaid accounting fees. The plaintiffs agree to dismiss any and all claims against Bill and Benoit Keith Sheehan & Associates.
>
> * * *
>
> If you have any questions or concerns, please call me at the above-listed number.

See Russell Aff., Ex. 2.

Defendants notified the Court that the parties were canceling their pre-trial conference with the Court because a settlement had been reached in the matter. See September 30, 2004 Order [Docket No. 40]. In October of 2004, defendants' counsel called plaintiffs' counsel to ask to whom the settlement check should be made payable; at no time during the conversation was any issue raised by plaintiffs' counsel regarding the settlement agreement. See Russell Aff., ¶ 7. On November 1, 2004, defendants sent plaintiffs the Stipulation for Dismissal with prejudice, Release, and a $15,000 check. See Russell Aff., Exs. 3-6.

Plaintiffs asserted that after the settlement was reached, Kirckof informed his counsel, Grinde, that he was to proceed with litigating this case.[1] See Kirckof Aff., ¶ 16. On or about November 10, 2004, plaintiffs retained Damon Ward ("Ward") as counsel. See Russell Aff., Ex. 4; see also Affidavit of Damon L. Ward ("Ward Aff."), ¶ 2.

On November 12, 2004, defendants' counsel, Hoch left a message with Ward in order

---

[1] There is nothing in the record that provides exactly when Kirckof made this statement to

3

to discuss the settlement. See Hoch Aff., ¶ 11. On November 17, 2004, Ward returned the call and communicated to Hoch that his clients no longer wanted to settle the case for $15,000 and were withdrawing their "invitation" to settle this matter. See Hoch Aff., ¶ 12; Ward Aff., ¶ 3.

## DISCUSSION

### I. MOTION TO STRIKE REPLY MEMORANDUM AND AFFIDAVIT[2]

Plaintiffs have moved for an order from this Court striking defendants' reply memorandum and the Second Affidavit of Jon R. Russell ("Russell Second Affidavit") submitted with defendants' reply brief. See Plaintiff's Memorandum in Support of Motion to Strike Reply Memorandum and Russell Second Affidavit of Jon R. Russel ("Pl.'s Strike Mem.") at p. 1. In particular, plaintiffs maintained that the Russell Second Affidavit was untimely and impermissible under Local Rules of the District Court, District of Minnesota, 7.1(b)(1) and 7.1(b)(3); that the Russell Second Affidavit lacked foundation; and that defendants' reply memorandum went beyond plaintiffs' memorandum in opposition to the motion to enforce the settlement. See Pl.'s Strike Mem. at pp. 2-4.

Local Rule 7.1(b)(3), which allows for reply memoranda by a moving party in relation dispositive motion practice, states:

> Reply Memorandum. The moving party may submit a reply memorandum of law by filing and serving such memorandum in accordance with Local Rule 5.1 et seq., the Electronic Case Filing Procedures, and Fed. R. Civ. P. 5(b) at least 12 days prior

---

Grinde.

[2] Plaintiff's Motion to Strike Defendants' Reply Memorandum and Second Affidavit of Jon R. Russell [Docket No. 63] would normally be addressed in an order as opposed to a report and recommendation; however, since the facts and issues in all the outstanding motions in this case are so intertwined with each other, the Court has decided to address them all together as a part of this Report and Recommendation.

to the hearing.

In this case, defendants' reply memorandum and supporting affidavit were served and filed on January 13, 2005, which was twelve days prior to the January 25, 2005 hearing. As such, the reply materials were in compliance with the timing requirements of Local Rule 7.1(b)(3). Plaintiffs are correct that the plain language of Local Rule 7.1(b)(3) does not expressly permit affidavits in conjunction with reply memoranda, and that only Local Rule 7.1 (b)(1) expressly allows affidavits and exhibits to be filed 45-days prior to a hearing on a dispositive motion. However, the 1999 Advisory Committee's Note to Local Rule 7.1(b)(2) does allow for reply affidavits in limited situations:

> Supporting Affidavits. Rule 7.1(b)(2) specifically contemplates that the factual basis for a dispositive motion will be established with affidavits and exhibits served and filed in conjunction with the initial motion and the responding party's memorandum of law. Although the rule makes provision for a Reply Memorandum, it neither permits nor prohibits the moving party from filing affidavits or other factual material therewith. The rule contemplates that the discovery record will allow the initial summary judgment submission to anticipate and address the responding party's factual claims. <u>Reply affidavits are appropriate only when necessary to address factual claims of the responding party that were not reasonably anticipated. It is improper to withhold information - either from discovery or from initial moving papers - in order to gain an advantage</u>.

(Emphasis added); <u>see</u> <u>also</u> <u>Beveridge v. Northwest Airlines, Inc.</u>, 259 F. Supp.2d 838, 845-46 (D. Minn. 2003).

In this case, the reply memorandum and Russell Second Affidavit seek to address the arguments in plaintiffs' opposition memorandum that there was no settlement agreement in this case because not all of the material terms had been agreed to and because Mr. Kirckof

was under a great deal of emotional stress during the relevant time period. The only communication before defendants' November 29, 2004 submission in connection with this motion was the November 17, 2004, communication when Ward stated to Hoch that his clients no longer wanted to settle the case for $15,000 and were withdrawing their "invitation" to settle this matter.[3] See Hoch Aff., ¶¶ 12, 13; Ward Aff., ¶ 3. In other words, this Court does not find, based on the existing record, that defendants could have reasonably anticipated the specific arguments proffered by plaintiffs as to why the settlement agreement at issue should not be enforced, given their failure to provide any reasons prior to defendants bringing their motion to enforce the settlement agreement. Further, this Court finds that the reply affidavit addresses the issues raised by plaintiffs in their opposition memorandum. This Court also finds that the reply memorandum was also responsive to plaintiffs' opposition memorandum.

Further, this Court finds plaintiffs' lack of foundation argument is without merit. In this regard, plaintiffs claimed that the following assertion in the Russell Second Affidavit lacks foundation:

> That it was Benoit, Keith, Sheehan & Associates and William A. Benoit's intention that the settlement agreement entered between the parties on September 28, 2004, was intended to fully and finally resolve the dispute with the plaintiffs in regard to plaintiffs' business reorganization.

See Russell Second Affidavit, ¶ 3.

Plaintiffs argued that they are "unsure" how Russell could have come to the personal

---

[3] This Court notes that on November 30, 2004, that plaintiffs' counsel notified defendants by letter that his clients had not reached a settlement as to the terms in defendants' written proposed settlement agreement. See Russell Second Affidavit, Ex. 8. However, defendants' counsel received this letter on December 2, 2004, after defendants had brought their motion to enforce the settlement on November 29, 2004. See Russell Second Affidavit, ¶ 4.

6

knowledge of what was in the collective minds of defendants, except that he is their attorney. See Pl.'s Strike Mem. at p. 3.  This Court finds that with regards to legal settlements, an attorney is very likely to know his client's wishes and intent.  This, coupled with the fact that Russell has attested to the facts in his Russell Second Affidavit under oath, leads to the Court's finding that the above-listed statement made by Russell in his Second Affidavit does not lack the necessary foundation.[4]

For all these reasons, this Court denies plaintiffs' motion to strike.[5]

## II.   MOTION TO ENFORCE SETTLEMENT

Defendants claim that the September 28, 2004 oral settlement agreement at issue is binding and enforceable.  See Defendants' Memorandum of Law in Support of Motion to Enforce Settlement Agreement at pp. 5-6.  Plaintiffs argued that no valid agreement exists to be enforced in this case as there was no agreement reached on all material terms.  See Pl.'s Mem. at pp. 6, 8-9.  In addition, even if a valid settlement did exist, plaintiffs argued that the agreement is invalid as it was made when Kirckof was under a great deal of stress due to the illness of his counsel and expert witness.  Id. at pp. 7-8.

### A.   Standard of Review

---

[4]   While plaintiffs complained that Russell's representations were made after the close of discovery, there is nothing to preclude parties from relying on factual assertions in affidavits in support of their dispositive motions.

[5]   This Court also notes that plaintiffs filed and served their motion to strike on January 17, 2005. The hearing in this matter was held on January 25, 2005. Under Local Rule 7.1(a), non-dispositive motions are to be filed and served 14 days before a hearing.  In this case, plaintiffs filed their moving papers only 7 days prior to the hearing date.  Rather than taking matters into their own hands, plaintiffs would have been better served if they had sought permission from this Court allowing them to file their moving papers.

Motions to enforce settlement are dispositive, and should therefore be treated similarly to motions for summary judgment. See Transclean Corp. v. Motorvac Techs., Civil No. 01-287 (JRT/FLN), 2002 U.S. Dist. LEXIS 19312 at * 5 (D. Minn., Sept. 30, 2002); see also Tiernan v. Devoe, 923 F.2d 1024, 1031 (3rd Cir. 1991).

Settling suits without trial is highly favored, and such agreements will not lightly be set aside by courts. See Beach v. Anderson, 417 N.W.2d 709, 711-12 (Minn. Ct. App. 1988) (citation omitted), rev. denied (Minn. Mar. 23, 1988) (citation omitted). "'Settlement agreements are governed by principles of contract law.'"[6] See MLF Realty L.P. v. Rochester Ass'n, 92 F.3d 752, 756 (8th Cir. 1996) (quoting Sheng v. Starkey Lab., Inc., 53 F.3d 192, 194 (8th Cir. 1995)); see also Ryan v. Ryan, 292 Minn. 52, 193 N.W.2d 295, 297 (Minn. 1971); St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mut. Ins. Co., 496 N.W.2d 411, 415 (Minn. Ct. App. 1993) (citations omitted), rev. denied (Minn. Apr. 29, 1993). "'To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement.'" Jallen v. Agre, 264 Minn. 369, 119 N.W.2d 739, 743 (Minn. 1963); see also Sheng, 53 F.3d at 194 ("[A] contract is not formed unless the parties mutually assent to all material terms.") (citing Ryan, 193 N.W.2d at 297; Restatement (Second) of Contracts § 33 cmt. c (1981)); Transclean, 2002 U.S. Dist. LEXIS 19312 at *26 (same) (citation omitted).[7] "A settlement agreement may

---

[6] This Court notes that in diversity cases, state law governs settlement agreements. Transclean Corp. v. Motorvac Techs., Civil No. 01-287 (JRT/FLN), 2002 U.S. Dist. LEXIS 19312 at *11 n. 7 (citing Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999)).

[7] "The question of whether a particular term is material, 'is a legal determination for the Court.'" Goddard, Inc. v. Henry's Foods, Inc., 291 F. Supp.2d 1021, 1028 (D. Minn. 2003)

8

be enforceable even if it is not in writing or is not executed." Luigino's Inc. v. Societes des Produits Nestle S.A., Civil No. 03-4186 (ADM/RLE), 2005 U.S. Dist. LEXIS 5157 at *7 (D. Minn. March 30, 2005) (citing Bergstrom v. Sears. Roebuck & Co., 532 F. Supp. 923, 932 (D. Minn. 1982); Shell v. Amalgamated Cotton Garment, 871 F. Supp. 1173, 1181 n. 16 (D. Minn. 1994)).

### B.   Material Terms of the Settlement

"Material terms are those terms that the settlement hinges upon." See Transclean, 2002 U.S. Dist. LEXIS 19312 at *26 (citing Sheng, 117 F.3d at 1083). "When the existence of a contract depends on the materiality of certain terms, materiality must be determined as of the time the contract was allegedly formed." Sheng, 53 F.3d at 195. A settlement agreement is still valid if there are ancillary issues that have not been resolved and the failure to work out all of the details in a settlement agreement will not render an otherwise valid settlement agreement invalid. See Sheng v. Starkey Laboratories, Inc., 117 F.3d 1081, 1083 (8th Cir. 1995) (citations omitted); see also Triple B & G, Inc. v. City of Fairmont, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992) (citation omitted) ("[A]n agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them.") (citation omitted).

For example, in Sheng, supra, the parties agreed that plaintiff would dismiss all of her claims against defendant in exchange for defendant's payment of $73,500. 117 F.3d at 1082. The plaintiff then attempted to have the settlement vacated on the grounds that parties did not

---

(quoting Transclean, supra).

Kirckof R&R

agree to all the material terms of the settlement. Id. at 1083. However, the Eighth Circuit affirmed the district court's decision that a valid settlement was reached when parties agreed to dismiss all claims in exchange for $73,500, and that the deal did not hinge on tax treatment of money and the wording of liability release. Id.

The decision in Transclean, supra, also gives this Court guidance on the issue of material terms. In Transclean, the parties agreed that the defendant MotorVac would pay plaintiffs $ 1,001,207 in exchange for plaintiffs' dismissal of their patent infringement suit against MotorVac. 2002 U.S. Dist. LEXIS 19312 at *2. The parties also agreed that MotorVac would not receive a going-forward license. Id. These facts were undisputed. One of the questions before the Court was whether the terms represented the settlement agreement's only material terms. Id. at *26. The objections made by MotorVac was that there was no agreement about exactly which machines would be released, or about whether MotorVac would be permitted to contest the validity of Transclean's patents in future suits. Id. at *28. The court found that these issue were not material despite the claims by defendant these issues were "deal breakers," since these "issues were not discussed before plaintiffs made their settlement offer, and nothing indicates that MotorVac was especially concerned with these terms after it accepted, until plaintiffs filed the motion to enforce the settlement." Id.

In this case, plaintiffs argued that not a single written term of the settlement agreement had been agreed upon and that there has been no "meeting of the mind" as to the essential terms of the agreement. See Pl.'s Mem. at p. 6. Plaintiffs do not identify what essential terms are missing from the oral agreement, but did argue that the Stipulation for Dismissal with

Prejudice and Release, sent to plaintiffs on November 1, 2004, contained provisions for dismissal, release and indemnification—none of which, according to plaintiffs were ever mentioned, negotiated, or agreed upon by them. Id. at p. 9. More specifically, plaintiffs argued at the hearing that the written settlement agreement drafted by defendants did not contain a mutual release relating to future claims arising out the transaction or occurrences underlying their claims, and did not contain a mutual indemnification provision if the settlement agreement was breached. According to plaintiffs the only thing before this Court is an unenforceable oral "invitation" by them to settle, which they later rescinded.

It is undisputed that on September 28, 2004, plaintiffs' counsel, then Grinde, telephoned defendants' counsel to communicate that plaintiffs were interested in settlement, and offered to settle the matter for $15,000. See Russell Aff., ¶¶ 2, 3. Plaintiffs do not deny that this offer was made and actually acknowledge that plaintiffs invited a resolution to this case from defendants. See Kirckof Aff., ¶15. In the eyes of this Court, an invitation to settle case for $15,000 is an offer. There is also no dispute that defendants accepted this offer. See Russell Aff., ¶¶ 4, 5. Again, plaintiffs do not dispute that the defendants accepted the offer to settle plaintiffs' claims for $15,000. The September 29, 2004 letter from defendants' counsel to plaintiffs' counsel memorialized the settlement agreement, which provided that defendants were:

> [T]o pay plaintiffs $15,000 and dismiss their claim for unpaid accounting fees. The plaintiffs agree to dismissed any and all claims against Bill and Benoit Keith Sheehan & Associates.

See Russell Aff., Ex. 2.[8]

---

[8]   This Court finds that there is no dispute of fact as to the initial principal agreement, thereby negating the necessity of an evidentiary hearing as to this agreement.

Kirckof R&R

In addition, it is undisputed that the September 29, 2004 letter communicated to plaintiffs' counsel that if there were any questions or concerns that they should contact defendants' counsel. Plaintiffs, however, never contacted defendants to communicate that the settlement agreement memorialized in the letter was incomplete or incorrect. Further, there was no statement by plaintiffs to the Court or to defendants that a settlement had not been reached after the Court issued its Order on September 30, 2004, stating that it was canceling the pre-trial conference because a settlement had been reached in the matter. Nor did plaintiffs raise any issues regarding the settlement agreement when defendants' counsel called plaintiffs' counsel, in October of 2004, to ask to whom the settlement check should be made payable to. It was only on November 17, 2004, after plaintiffs had retained new counsel, that plaintiffs objected to the settlement agreement. According to defendants' counsel, Ward communicated that plaintiffs were no longer interested in settling for $15,000, but were willing to settle for more. See Hoch Aff., ¶¶ 12, 13. Neither plaintiffs nor Ward have submitted any affidavits or evidence to contradict this assertion.

It was not until November 30, 2004, that plaintiffs' counsel notified defendants by letter[9] that his clients had not reached a settlement as to the terms in defendants' written proposed settlement agreement (see Russell Second Affidavit, Ex. 8), and it was not until the hearing on this matter that plaintiffs specifically argued that the proposed settlement agreement did not contain a mutual release or a mutual indemnification provision, if the settlement agreement

---

[9] As stated previously, defendants' counsel received this letter on December 2, 2004, after defendants had brought their motion to enforce the settlement on November 29, 2004. See Russell Second Affidavit, ¶ 4.

was breached. There is no evidence presented to suggest that these issues were material when the parties agreed that defendants would pay $15,000 to plaintiffs and dismiss their counterclaims, in return for plaintiffs dismissing their claims against defendants. See Transclean,, 2002 U.S. Dist. LEXIS 19312 at *28 (finding that issues not raised during the initial agreement is evidence that additional terms raised are not material).

Based on the record, this Court finds that all the materials terms were addressed by the initial oral agreement by the parties, and were confirmed by defendants' September 29, 2004 letter—i.e., that both parties would dismiss their respective claims in this case and that plaintiffs be paid an additional sum of money. See Russell Aff., Ex. 2. "A party who voluntarily enters into a settlement agreement cannot avoid the agreement upon determining after consultation with replacement counsel that the agreement has ultimately become disadvantageous or the settlement amount paltry." Schumann v. Northtown Ins. Agency, Inc., 452 N.W.2d 482, 485 (Minn. Ct. App. 1990) (citing Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985)). As such, this Court finds that the agreement by the parties, as commemorated by counsel for defendants' September 29, 2004 letter, is a binding settlement on the parties, and that the additional terms in the written agreement are not binding on the parties and are not material to the principal agreement made by the parties.

### C.  Validity of the Settlement Agreement

Plaintiffs also argued that even if a valid agreement was made, it should be set aside by the Court as it was "improvidently made." See Pls.' Mem. at p. 7. A party who seeks vacation of a settlement has the burden of showing that there are sufficient grounds to do so. See Johnson v. St. Paul Ins. Co., 305 N.W.2d 571, 573 (Minn. 1981). Plaintiffs cited to

Pekarek v. Wilking, 380 N.W.2d 161 (Minn. Ct. App. 1986), for the proposition that the following factors are to be considered in determining whether a stipulation was properly entered into:

> (1) whether the party was represented by competent counsel; (2) whether extensive and detailed negotiations occurred; (3) whether the party agreed to the stipulation in open court; and (4) whether when questioned by the judge the party acknowledged understanding the terms and considering them fair and equitable.

Id. at 163 (citing Tomscak v. Tomscak, 352 N.W.2d 464, 466 (Minn. Ct. App. 1984)).

However, both Pekarek and Tomscak, pertained to stipulations in marital dissolution cases. This Court is reluctant to extend the factors set forth in these cases to all settlements outside of the dissolution context, given that many settlements are reached without extensive and detailed negotiations and outside of the presence of a court.

Plaintiffs also asserted that any settlement should be set aside, in part, because their counsel of record, during the time when the settlement was reached, did not have significant federal court experience. See Pls.' Mem. at p. 7. This Court does not understand how a lack of federal court experience relates to the competency of an attorney to assist his client on settlement regarding state law claims. Further, plaintiffs have presented this Court with no evidence suggesting that attorney Grinde did not represent them in a competent manner.

Plaintiffs also alleged that the stress of being deprived of their initial counsel, Alfred Edwall, and their expert witness due to illness, caused plaintiffs to improvidently enter the settlement at issue. See Pls.' Mem. at p. 8. However, "[m]ere mental weakness does not incapacitate a person from contracting.'" Fisher v. Schefers, 656 N.W.2d 592, 595 (Minn. Ct. App. 2003) (quoting Timm v. Schneider, 203 Minn. 1, 4, 279 N.W. 754, 755 (1938) (quotation

14

omitted)). Plaintiffs have not even provided this Court any medical evidence suggesting that Mr. Kirckof was under incapacitating stress when the settlement agreement was made. Moreover, plaintiffs were not facing this case by themselves, as counsel represented them when the settlement at issue was reached. This is simply a situation where plaintiffs, sophisticated business people, sought, after-the-fact, to change their minds. Therefore, this Court recommends against invalidating the settlement agreement reached by the parties, and further recommends that the settlement agreement, as memorialized by counsel for defendants' September 29, 2004 letter, be enforced.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

1. Defendants' Motion to Enforce Settlement Agreement [Docket No. 41] be **GRANTED**;

2. Plaintiffs' Motion to Modify Pretrial Scheduling Order [Docket No. 55] be **DENIED**; and

3. Plaintiffs' Motion to Strike Defendants' Reply Memorandum and Second Affidavit of Jon R. Russel [Docket No. 63] be **DENIED**.

Dated:        June 7, 2005

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **June 24, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **June 24, 2005**.

Kirckof R&R